**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NCS PEARSON, INC., | Case No. 1:21-cv-10773 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| SAVVAS LEARNING COMPANY, LLC, | |
| Defendant. | |

Plaintiff NCS Pearson, Inc. ("NCS Pearson"), through its undersigned counsel, brings this action against Defendant Savvas Learning Company, LLC ("Savvas") for breach of a license agreement, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of New York's Deceptive Practices Act pertaining to Savvas' use of proprietary software owned and designed by NCS Pearson. NCS Pearson seeks injunctive relief, damages, an accounting, attorneys' fees and costs, and any such other relief as the Court deems proper. In support of its claims, NCS Pearson alleges as follows:

**INTRODUCTION**

1.     NCS Pearson is a world leader in providing educational and professional assessment products and services. NCS Pearson has a comprehensive portfolio of assessment tools used by schools, businesses, and governmental agencies. In or about 2000, NCS Pearson created its proprietary TestNav 8 Previewer v1.5.000 software ("TestNav®,"), which is an online test delivery software. Since the creation of TestNav®, NCS Pearson has incorporated TestNav® into its own products and services offered to clients of NCS Pearson, Pearson Education, Inc. ("Pearson Education"), and their subsidiaries and affiliates, including Pearson K12 Learning, LLC ("K12

Learning").  NCS Pearson and Pearson Education are owned by the same ultimate parent, Pearson plc (a publicly traded UK company).

2.      Prior to 2019, K12 Learning was a wholly owned, direct subsidiary of Trio Parent Holdings LLC ("Trio").  At such time, Trio was owned by Pearson Education and NCS Pearson. On or about February 16, 2019, Trio entered into an agreement to sell the business operated by K12 Learning to Gateway Education LLC ("Gateway"), an entity unaffiliated with Pearson Education and NCS Pearson.  Pursuant to the purchase agreement between Trio and Gateway, the closing date for the sale of K12 Learning was set for March 28, 2019 ("the Sale Date").

3.      Subsequent to the Sale Date, NCS Pearson (as licensor) entered into a Limited Software License Agreement dated March 29, 2019 (the "License Agreement") with K12 Learning (as licensee) granting a limited, non-exclusive license for the use of TestNav® in accordance with the terms of the License Agreement.

4.      After the Sale Date, Gateway changed the name K12 Learning to Savvas Learning Company.

5.      In February 2021, Savvas advertised the release of a new application—the Savvas Math Screener and Diagnostic Assessments ("MSDA")—and capabilities therein, which exceed the rights and licenses for TestNav® granted to Savvas by NCS Pearson under the License Agreement.

6.      NCS Pearson informed Savvas that the application and capabilities as advertised constitute unlicensed use of TestNav®, and therefore, such applications and capabilities breach the License Agreement.  NCS Pearson demanded that Savvas cease any unlicensed use of TestNav®.

7.     Savvas refused to cease the wrongful conduct, and as a result, NCS Pearson has been damaged insofar as it has been deprived of its contractual rights and sustained substantial damages.

## PARTIES

8.     Plaintiff NCS Pearson is a corporation organized and existing under the laws of the State of Minnesota, with its principal place of business at 5601 Green Valley Drive, Bloomington, Minnesota 55437.

9.     Defendant Savvas is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 15 E Midland Avenue, Suite 502, Paramus, New Jersey 07652.

10.     On information and belief, Savvas is engaged in the business of providing learning solutions across kindergarten to grade 12 ("K-12") throughout the globe.  Savvas' learning solutions span all K-12 grades and disciplines and include core curriculum, supplemental content, intervention programs, and professional development services.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).  Plaintiff NCS Pearson and Defendant Savvas are citizens of different states and the amount in controversy exceeds the jurisdictional minimum of $75,000.

12.     Venue in this District is proper because Savvas subjected itself to the jurisdiction of this Court by executing the contract at issue, the License Agreement, on March 29, 2019, wherein the parties agreed that:

> Each Party hereto irrevocably submits to the exclusive jurisdiction of any state or Federal court located within the County of New York in the State of New York for the purposes of any Action arising out of this Agreement or any transaction contemplated hereby, and agrees to commence any such

Action only in such courts.  Each Party further agrees that service of any process, summons, notice or document by U.S. registered mail to such Party's respective address set forth herein shall be effective service of process for any such Action. Each Party irrevocably and unconditionally waives any objection to the laying of venue of any Action arising out of this Agreement or the transactions contemplated hereby in such courts, and hereby irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such Action brought in any such court has been brought in an inconvenient forum.

License Agreement § 7.7.  The License Agreement is attached as **Exhibit 1**.

## FACTUAL ALLEGATIONS

**Education Technology**

13.    Education technology ("EdTech") is a fairly new, but quickly growing industry. EdTech encompasses the implementation of technology inside and outside the classroom. Students are making use of new technologies more and more each day.  It is not uncommon to see a classroom of students using tablets and computers, instead of paper and pencils, to receive and submit course content.  The delivery of course content through online means has greatly expanded over the last decade, and will continue to expand exponentially each year.

14.    COVID-19 was a catalyst for growth in EdTech.  Starting in 2020, public and private schools saw an increased use in EdTech as learning shifted from the classroom to the home. With the rapid increase in EdTech use, schools are thinking differently about how students learn and how content is delivered—whether in the classroom or at home.

15.    As students become more familiar with using technology in education settings, the ability to administer tests in an online environment has become an integral part of EdTech. Ensuring that the online testing environment contains the same reliability and consistency as the traditional hard copy testing environment requires computer software developed with the appropriate safety, useability, and functionality components.

4

**NCS Pearson's TestNav® Platform**

16.     Since in or about 2000, NCS Pearson has developed a proprietary test delivery platform called TestNav®.  NCS Pearson has invested significant money and resources into its TestNav® platform—spending years and hundreds of thousands of dollars to develop and market TestNav®.

17.     NCS Pearson designed TestNav® to function across a wide range of digital platforms and to deliver test content without regard to the content provider.  TestNav® enables the delivery of tests to students online in a secure and reliable manner.  TestNav® has been a tremendous success for NCS Pearson, and is trusted to delivery tests for The ACT, schools at all levels, government agencies, and businesses.

18.     TestNav® is of significant value to NCS Pearson.  NCS Pearson offers TestNav® as a part of its comprehensive assessment solution.  Students use TestNav® to take tests, which are transmitted to NCS Pearson for scoring.  TestNav® delivers millions of secure tests each year through TestNav®.

19.     TestNav® is unique in the marketplace.  It includes unique features that are a result of the way it was developed and designed.  Some of the unique features are visible to students as they interact with the TestNav® user interface.  Other software characteristics, of which students are not aware, are only visible in the code.  To ensure the reliability of the testing environment, NCS Pearson designed measures to safeguard its original work and prevent unauthorized use of TestNav®.

20.     As described in Paragraph 16, NCS Pearson has devoted substantial time and resources to the design of TestNav®.  Competition in the EdTech industry for online test delivery is fierce and has only grown during COVID-19.  Competitive advantage in the industry is largely

dependent on the quality of the testing experience, the safety features ensuring the reliability of the results, and the ability to use the results in student assessments. As a result, NCS Pearson has devoted substantial resources and time to the invention of the TestNav® platform.

**Savvas**

21.     Prior to the Sale Date, NCS Pearson indirectly owned K12 Learning through its subsidiary Trio. After the Sale Date, K12 Learning was sold to Gateway and Gateway changed the name K12 Learning to Savvas. At all relevant times, K12 Learning, and now Savvas, developed education curriculum products and services for the K-12 market.

22.     One of Savvas' curriculum products is the Realize™ application. Realize™ is a learning management system: it is a digital home for more than 1,000 programs—from standards-aligned content and customizable assignments to calendars, analytics, and groups.

23.     Prior to the Sale Date, TestNav® was embedded in some of the products and services offered by K12 Learning. At that time, all of K12 Learning's products and services that embedded TestNav® were offered on one of two platforms: the Realize platform, and the Pearson System of Courses ("PSoC") platform.

24.     Upon the sale of K12 Learning to Gateway, K12 Learning's affiliation with NCS Pearson and all of K12 Learning's rights to use TestNav® ceased, requiring the need for a license.

**The License Agreement**

25.     After the Sale Date, NCS Pearson (as licensor) entered the License Agreement with K12 Learning, now Savvas (as licensee), pursuant to which NCS Pearson granted certain rights and licenses to use TestNav®, as set forth therein.

26.     Pursuant to the introductory paragraph of the License Agreement, the Effective Date was defined as March 29, 2019.

27.     Pursuant to Section 1.1 of the License Agreement, NCS Pearson granted to Savvas a limited license to use NCS Pearson's software.  Specifically, the License Agreement provides for:

> . . .a **limited, non-exclusive, non-transferable** (except as set forth in Section 7.5), **non-sublicensable** (except as permitted below), worldwide right and **license** during the Term of this Agreement to use, copy, download, perform, display, transmit, modify, improve, enhance, translate, and create derivative works of **the Software solely in connection with products and services of the Business specified in <u>Exhibit A</u>** [of the License Agreement].

**<u>Exhibit 1</u>** § 1.1 (emphasis added).

28.     The term "Software" is defined as Exhibit A to the License Agreement, which sets forth the scope of the license and rights granted to Savvas.  With respect to TestNav®, NCS Pearson granted to Savvas a license "**solely for use in the Realize platform and PSoC platform <u>in a manner substantially consistent with how such software is deployed on the Effective Date as an embedded and integrated component of the curriculum applications</u>** on such platforms." **<u>Exhibit 1</u>**, Exhibit A (emphasis added).

29.     The next sentence in Exhibit A explicitly provides—"[f]or the avoidance of doubt"—three ways in which Savvas may **not** use TestNav.  **<u>Exhibit 1</u>**, Exhibit A (emphasis added).

30.     <u>First</u>, Savvas "shall not be permitted to use, distribute, or sublicense" TestNav® "apart from the Realize Curriculum applications in which it is embedded."  **<u>Exhibit 1</u>**, Exhibit A.

31.     <u>Second</u>, Savvas "shall not be permitted to use, distribute, or sublicense" TestNav® "as a stand alone assessment application."  **<u>Exhibit 1</u>**, Exhibit A.

32.     <u>Third</u>, Savvas "shall not be permitted to use, distribute, or sublicense" TestNav® "to otherwise deliver stand alone assessment functionality." **<u>Exhibit 1</u>**, Exhibit A.

33.     Pursuant to Section 1.1 of the License Agreement, until January 1, 2025, Savvas need not pay any fee for its use of TestNav® so long as such use is in accordance with the License Agreement.  In 2025 and 2026, Savvas must pay to NCS Pearson a fee of $250,000 per year for Savvas' continued use of TestNav®.  In 2027, the fee increases to $350,000.  In 2028, the fee increases to $500,000.  Starting in 2029, the License Agreement expires and Savvas will no longer have any license to use TestNav®.

34.     Pursuant to Section 1.5 of the License Agreement, NCS Pearson granted no licenses or other rights to Savvas with respect to TestNav®, except for those expressly set forth in the License Agreement.

35.     Further, Section 1.5 also expressly prohibited Savvas from using TestNav® in connection with any products or services other than the products and services offered in the K-12 education market as of the Effective Date of the License Agreement.

**Savvas' Breach of the License Agreement**

36.     On February 11, 2021, Savvas issued a press release announcing new products it had developed jointly with WestEd for integration into the Realize™ platform.  A copy of the press release is attached as **Exhibit 2**.

37.     In the press release, Savvas announced that it developed a new product, MSDA. MSDA was designed to for use with Savvas' enVision® Mathematics, but it could also be used with "any core math curriculum" and with "Savvas Realize™ learning management system".

38.     According to the press release, the central functionality of MSDA is to match students with tests appropriate for their abilities, provide a way to diagnose students' math proficiencies, and evaluate content knowledge to support differentiated learning among students.

39.     The advertised functionality of MSDA requires Savvas to embed a test delivery platform into MSDA.

40.     Upon information and belief, Savvas does not have its own proprietary test delivery platform, has not obtained a license for a test delivery platform other than the TestNav® license, and thus, has embedded TestNav® into MSDA to achieve the announced functionality.

41.     Matching students with tests based on the students' abilities is an assessment function not previously available in Realize™.  And such functionality did not exist before the Effective Date of the License Agreement.

42.     Upon information and belief, MSDA is a standalone assessment product that can be integrated into curriculum products available on Realize™ or any other learning management platform.

43.     The License Agreement prohibits the use of TestNav® as part of "a stand alone assessment application or to otherwise deliver standalone assessment functionality."  **Exhibit 1**, Exhibit A.

44.     MSDA did not exist before the Effective Date of the License Agreement.  Thus, by embedding TestNav® in MSDA, a post-Effective Date assessment application, Savvas exceeded the scope of the license granted by the License Agreement.

45.     Upon information and belief, Savvas has embedded TestNav® in other products and services that did not exist as of the Effective Date.

46.     Savvas' use of TestNav® in connection with MSDA, and other products and services, is materially inconsistent with how TestNav® was deployed on the Effective Date; such use is thus a clear and material breach of the License Agreement.

47.     By embedding TestNav® into MSDA and other products and services that did not exist as of the Effective Date, Savvas knowingly and willfully breached the License Agreement by exceeding the scope of the license granted to Savvas by NCS Pearson.

48.     Savvas' use of TestNav® with MSDA and other products and services that did not exist as of the Effective Date is without NCS Pearson's authorization, consent, or knowledge, and without any compensation to NCS Pearson.

49.     On June 7, 2021, NCS Pearson contacted Savvas regarding the unlicensed use of TestNav®.  To date, Savvas has refused to stop its wrongful conduct.

50.     On information and belief, Savvas continues to market its MSDA and other products and services that use TestNav® beyond the scope of the license granted to Savvas. Savvas benefits financially from these products and services without any compensation to NCS Pearson.

51.     As a result of Savvas' actions described above, NCS Pearson has been directly damaged, and is continuing to be damaged, by the unauthorized use of TestNav®.

## CAUSES OF ACTION

### COUNT I
(Breach of Contract)

52.     NCS Pearson realleges and incorporates by reference all allegations set forth in the preceding paragraphs, as if fully set forth herein.

53.     Section 7.6 of the License Agreement provides that all matters relating to and arising out of the License Agreement will be governed by and construed in accordance with the Laws of the State of New York, without regard to conflicts of law principles.

54.     The License Agreement is a valid and enforceable contract.

55.     NCS Pearson faithfully performed all of its obligations under the License Agreement.

56.     Exhibit A to the License Agreement requires that Savvas "solely [] use [TestNav®] in the Realize platform and PSoC platform in a manner substantially consistent with how such software is deployed on the Effective Date" of the License Agreement, March 29, 2019.

57.     Exhibit A to the License Agreement requires also that Savvas may not: (1) "use, distribute, or sublicense [TestNav®] apart from the Realize Curriculum applications in which it is embedded"; (2) "use, distribute, or sublicense [TestNav®] . . . as a stand alone assessment application"; or (3) "use, distribute or sublicense [TestNav®] . . . to otherwise deliver stand alone assessment functionality."

58.     As of March 29, 2019, Savvas only used TestNav® as an embedded component of curriculum applications offered in its Realize™ platform.

59.     Savvas breached the License Agreement by using TestNav® in manners materially inconsistent to how TestNav® was used as of the Effective Date of the License Agreement.  Prior to the Effective Date, TestNav® was embedded in curriculum applications to deliver tests to students to evaluate their progress through the curriculum.   Savvas breached the License Agreement by embedding TestNav® in its MSDA product, an assessment application aimed at assessing student proficiency outside of a particular curriculum.  This assessment capability did not exist as of March 29, 2019.

60.     Further, MSDA can be used with any other core math curriculum, including those outside of the Realize™ platform.  This capability permits Savvas to offer MSDA as a standalone application with TestNav® embedded in it to deliver assessment content.

61.     Through its actions, Savvas "use[d], distribute[d], or sublicense[d]" TestNav® "apart from the Realize Curriculum applications in which it is embedded" on the Effective Date and used it as part of a stand alone assessment application and used it in a manner allowing delivery of stand alone assessment functionality.

62.     Savvas' actions violate its duties and obligations under Section 1.1 and Exhibit A to the License Agreement.

63.     As a direct and proximate result of Savvas' breaches, Savvas has caused and will continue to cause damage to NCS Pearson in an amount to be determined at trial, plus applicable interests, attorneys' fees, costs, and such other relief as the Court may deem just and proper.

64.     As a direct and proximate results of Savvas' breaches, NCS Pearson has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law.  On information and belief, unless Savvas' breaching conduct is enjoined by this Court, Savvas will continue to breach the License Agreement by using TestNav® beyond the scope of the license granted by NCS Pearson.  NCS Pearson therefore is entitled to permanent injunctive relief restraining and enjoining Savvas' breaching conduct.

## COUNT II
(Breach of Implied Covenant of Good Faith and Fair Dealing)

65.     NCS Pearson realleges and incorporates by reference all allegations set forth in the preceding paragraphs, as if fully set forth herein.

66.     New York law has recognized the implied covenant of good faith and fair dealing as an integral part of every contact, which imposes upon each party a duty not to do anything that will deprive the other party of the benefits of the contract.

67.     The License Agreement is a valid and enforceable contract.

68.     NCS Pearson faithfully performed all of its obligations under the License Agreement.

69.     NCS Pearson and Savvas entered the License Agreement solely to allow Savvas to continue offering the products and services that utilized TestNav® as an embedded component as of the Effective Date.  Specifically, the License Agreement allowed Savvas to continue using TestNav® with the curriculum applications in place on the Realize™ platform as of March 29, 2019.  By permitting such limited use of TestNav®, Realize™ users (such as schools) would not immediately lose functionality in the Realize™ platform.

70.     The License Agreement did not authorize Savvas to expand the use of TestNav® beyond how it was specifically used on or prior to March 29, 2019.  The License Agreement did not grant Savvas an unlimited license for using TestNav® with an unlimited number of products and services developed after March 29, 2019.  If Savvas wishes to expand its right beyond those provided in the License Agreement, Savvas is free to negotiate agreeable terms for authorized use of TestNav® with products and services created after March 29, 2019.

71.     Savvas' use of TestNav® in connection with MSDA and other products and services that did not exist as of March 29, 2019 deprives NCS Pearson of the benefit of its bargain and frustrates the purpose of the License Agreement.  Under the License Agreement, Savvas was granted access to NCS Pearson's TestNav® software for limited use.  Savvas has taken advantage of that access by using NCS Pearson's TestNav® software in an expanded manner without compensating NCS Pearson for that use.

72.     Savvas' use of TestNav® in connection with MSDA and other products and services that did not exist as of March 29, 2019 breaches the implied covenant of good faith and fair dealing.

73.     Savvas' breach of the implied covenant of good faith and fair dealing as alleged herein has caused and will continue to cause damage to NCS Pearson in an amount to be determined at trial, plus applicable interests, attorneys' fees, costs, and such other relief as the Court may deem just and proper.

74.     As a direct and proximate results of Savvas' breaches, NCS Pearson has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law.  On information and belief, unless Savvas' breaching conduct is enjoined by this Court, Savvas will continue to breach the License Agreement by using TestNav® beyond the scope of the license granted by NCS Pearson.  NCS Pearson therefore is entitled to permanent injunctive relief restraining and enjoining Savvas' breaching conduct.

## COUNT III
### (Unjust Enrichment)

75.     NCS Pearson realleges and incorporates by reference all allegations in the preceding paragraphs, as if fully set forth herein.

76.     NCS Pearson alleges in the alternative to its breach of contract claim, that NCS Pearson is entitled to recover under the doctrine of unjust enrichment.

77.     On March 29, 2019, NCS Pearson licensed to Savvas its proprietary software, TestNav®, for limited use in Savvas' products.

78.     Since that time, Savvas has used TestNav® beyond the scope of the limited license granted by NCS Pearson.  As a result of its unlicensed use of TestNav®, Savvas marketed and offered TestNav® in a manner not permitted under the License Agreement.

79.     Savvas received a benefit from the unlicensed use of TestNav® through receipt of compensation from third parties who paid Savvas to use products and services that improperly integrated TestNav®.

80.    Savvas received this benefit at the expense of NCS Pearson because it deprived NCS Pearson of its right to receive compensation for the unlicensed use.  Savvas was aware of and had knowledge that NCS Pearson does not normally license TestNav® to third parties.

81.    NCS Pearson licensed TestNav® to Savvas for the limited purpose of maintaining the status quo, and avoiding the immediate loss of test delivery functionality in Savvas' core business, delivery of K-12 curriculum applications.

82.    NCS Pearson has demanded that Savvas negotiate agreeable terms for its use of TestNav® beyond the scope of the license granted in the License Agreement.  Savvas has refused to do so.

83.    Savvas has accepted and retained the benefit it received from the unlicensed use of TestNav®.  Such retention is against equity and conscience because it deprives NCS Pearson of the opportunity to receive compensation for use of NCS Pearson's proprietary and copyrighted work, TestNav®.

84.    As a result of Savvas' retention of compensation from third parties who paid Savvas to use products and services that improperly integrated TestNav®, NCS Pearson has suffered actual and significant damages.  NCS Pearson has been deprived of compensation for the use of TestNav®.

85.    Without relief from the Court, Savvas will continue to be unjustly enriched in amount to be determined at trial.

**COUNT IV**
(Violation of New York Deceptive Practices Act)

86.    NCS Pearson realleges and incorporates by reference all allegations set forth in the preceding paragraphs, as if fully set forth herein.

87.     New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the State of New York.

88.     By offering and selling learning management services, Savvas conducts business or provides service within the meaning of New York General Business Law § 349.

89.     NCS Pearson is the legal owner of the copyrights protecting the use, distribution, and license of TestNav®.

90.     Upon information and belief, Savvas embedded TestNav® into MSDA and other products and services, exceeding the scope of its license under the License Agreement.

91.     Such conduct is a deceptive act or practice and likely to mislead and deceive consumers of Savvas' products and services.

92.     By offering products and services containing unauthorized versions of TestNav®, Savvas has engaged in unfair and deceptive acts and practices in violation of New York General Business Law § 349.

93.     As a direct and proximate result of Savvas' conduct, NCS Pearson has sustained and is likely to continue to sustain damages.  NCS Pearson is entitled to damages in an amount to be determined at trial.

94.     NCS Pearson also seeks its attorney's fees under New York General Business Law § 349(h).

95.     NCS Pearson is entitled to exemplary and punitive damages by reason of Savvas' willful, reckless, deliberate, and intentional conduct.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, NCS Pearson requests a judgment be issued and entered against Savvas, and respectfully requests the Court to:

A.      Award NCS Pearson its actual damages, in amount to be determined at trial, but in no event less than $75,000.00;

B.      Award NCS Pearson exemplary, statutory, compensatory, and special damages;

C.      Award NCS Pearson recovery of pre- and post-judgment interest, attorneys' fees, and costs;

D.      Order an accounting for damages;

E.      Enter a permanent injunction against Savvas enjoining Savvas from any and all unlicensed use of NCS Pearson's TestNav®, including enjoining Savvas from use of TestNav® in MSDA and other products and services that did not exist as of March 29, 2019; and

F.      Order such other and further relief as the Court deems just and proper.

Dated: December 16, 2021          Respectfully submitted,

**ORRICK, HERRINGTON & SUTCLIFFE LLP**


*/s/ Stephen Hall*　　　　　　　　　

Stephen Hall (*pro hac vice* pending)
222 Berkley Street
Suite 2000
Boston, MA 02116
(617) 880-1800
stephen.hall@orrick.com

William F. Stute (*pro hac vice* forthcoming)
Monica A. Svetoslavov (*pro hac vice* pending)
1152 15th Street N.W.
Washington, DC 20005
(202) 339-8400
wstute@orrick.com
msvetoslavov@orrick.com

*Attorneys for Plaintiff NCS Pearson, Inc.*