UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NCS PEARSON, INC.,

                    Plaintiff,

        - against -

SAVVAS LEARNING COMPANY, LLC,

                    Defendant.

21 Civ. 10773(VM)

DECISION AND ORDER

**VICTOR MARRERO, United States District Judge.**

Plaintiff NCS Pearson, Inc. ("NCS Pearson") brings this action against defendant Savvas Learning Company, LLC ("Savvas"). The complaint alleges four causes of action against Savvas, (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, and (4) violation of New York General Business Law § 349 (the "NYDPA") [N.Y. Gen. Bus. Law § 349] in connection with Savvas's use of software owned by NCS Pearson. (See "Complaint," Dkt. No. 1.)

Now pending before the Court is Savvas's motion to dismiss, in part, NCS Pearson's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (See "Motion," Dkt. No. 27.) For the reasons set forth below, the Motion is **GRANTED.**

## I.   BACKGROUND

A.   FACTS[1]

1.   NCS Pearson Sells K12 Learning and Licenses TestNav

NCS Pearson provides educational and professional assessment products and services that are used by schools, businesses, and governmental agencies in the United States. In 2000, NCS Pearson created its proprietary TestNav 8 Previewer v1.5.000 ("TestNav") software. TestNav is an online test delivery software that NCS Pearson has incorporated into the products and services it offers to its clients and also makes available to its subsidiaries and affiliates. Pearson K12 Learning, LLC ("K12 Learning") was a subsidiary of Trio Parent Holdings LLC ("Trio"). Trio, in turn, was owned by NCS Pearson and its affiliate, Pearson Education, Inc.

On February 16, 2019, Trio agreed to sell K12 Learning to Gateway Education LLC ("Gateway"). The sale closed on March 28, 2019 (the "Sale"). Following the Sale, Gateway changed the name of K12 Learning to Savvas Learning Company, LLC. Because the Sale ended Savvas's affiliation with NCS Pearson, Savvas lost the right to use TestNav. Prior to the Sale,

---

[1] Except as otherwise noted, the following background derives from the Complaint. The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to the plaintiff, as required under the standard set forth in Section II below.

K12 Learning, now Savvas, used TestNav and other NCS Pearson software in some of its products and services. All such products and services were offered on one of two digital learning platforms, either the Realize Learning Management System ("Realize") or the Pearson System of Courses. Unlike TestNav, Realize was a K12 Learning product and thus was part of the Sale.

On March 29, 2019, NCS Pearson entered into a license agreement with Savvas (the "License Agreement" or the "License"), granting Savvas a limited license to use TestNav as well as a second software product not at issue in this case. Though NCS Pearson does not normally license TestNav to third parties, NCS Pearson licensed TestNav to Savvas to maintain Savvas's ability to deliver tests in schools serving kindergarten through grade 12, the core of its business. Accordingly, under the terms of the License Agreement, Savvas was limited to using TestNav in the same way it was used prior to the Sale.

Specifically, Savvas had a license to use TestNav "solely for use in the Realize platform and [Pearson System of Courses] platform in a manner substantially consistent with how such software is deployed on the Effective Date as an embedded and integrated component of the curriculum

applications on such platforms." (License Agreement, Dkt. No. 1-1.) The License Agreement further specified that "[f]or the avoidance of doubt, Licensee shall not be permitted to use, distribute or sublicense TestNav 8 Previewer V.15.000 [sic] apart from the Realize Curriculum applications in which it is embedded or as a stand alone assessment application or to otherwise deliver stand alone assessment functionality." (Id.)

In addition to being limited, the License was also non-exclusive, non-transferable, and non-sublicensable. The License will expire in 2029. Fees will be due beginning in 2025 and will gradually increase each year.

2.   Savvas Breaches the License Agreement

On February 11, 2021, Savvas announced the launch of a new application, the Savvas Math Screener and Diagnostic Assessments ("MSDA"). According to the announcement, MSDA was developed for integration with the Realize platform and was designed for use with Savvas's enVision Mathematics application but could be used with any core math curriculum. As its name suggests, the central function of MSDA is to assess students' math proficiencies and pair them with tests appropriate for their abilities. The assessment function provided by MSDA was not previously available on Realize,

4

including before the Effective Date of the License Agreement. Additionally, though MSDA is a standalone assessment product, it lacks the ability to deliver tests. Rather than develop or license test delivery software, Savvas has used TestNav to deliver tests in MSDA.

On June 7, 2021, NCS Pearson contacted Savvas regarding the unlicensed use of TestNav in MSDA. To date, Savvas has refused to cease its conduct and continues to market and use TestNav with MSDA.

B.   <u>PROCEDURAL HISTORY</u>

NCS Pearson initiated this action on December 16, 2021. Consistent with the Court's Individual Practices, on February 8, 2022, Savvas wrote a pre-motion letter to NCS Pearson identifying alleged deficiencies in Counts II through IV of the Complaint that would provide its basis for a motion to dismiss. (<u>See</u> Dkt. No. 16.) On February 15, 2022, also consistent with the Court's Individual Practices, counsel for NCS Pearson sent a letter in response, opposing the grounds that Savvas stated in favor of the proposed motion. (<u>See</u> Dkt. No. 18.) On March 22, 2022, as required by the Court's Individual Practices, Savvas informed the Court that the parties had failed to resolve their dispute over the appropriateness of filing a motion to dismiss and thus avoid

motion practice at this stage of the proceedings. (See Dkt. No. 22.)[2] On April 15, 2022, NCS Pearson responded to Savvas's March 22, 2022 notification to the Court. (See Dkt. No. 23.)[3]

On June 24, 2022, the Court held that neither a pre-motion conference nor further briefing was necessary to resolve the parties' dispute. (See Dkt. No. 26.) The Court authorized Savvas to file a motion to dismiss, the substance of which was not to deviate from its initial pre-motion letter, to be followed by NCS Pearson's opposition, and Savvas's reply, all being limited to three pages. (See id.)

On July 6, 2022, Savvas filed a combined Motion to Dismiss (the "Motion") and Memorandum of Law in Support (the "Memorandum"). (See Dkt. No. 27.) On July 13, 2022, NCS Pearson filed its Memorandum of Law Opposing Savvas's Motion to Dismiss (the "Opposition"). (See Dkt. No. 28.) On July 20, 2022, Savvas filed its Reply in Support of the Motion to Dismiss (the "Reply"). (See Dkt. No. 29.)

On August 8, 2022, the Court directed the parties to advise the Court on whether they consented to deem the briefing submitted pursuant to the Court's June 24 Order to be a fully briefed motion to be ruled on the basis of the

---

[2] The March 22, 2022 letter and its accompanying exhibits were refiled on April 25, 2022. (See Dkt. No. 24.)
[3] The April 15, 2022 letter was refiled on April 26, 2022. (See Dkt. No. 25.)

limited briefs, or whether the parties requested supplemental or full briefing. (See Dkt. No. 30.) On August 15, 2022, the parties submitted a stipulation and proposed order setting a supplemental briefing schedule, allowing each side to file an additional three-page brief. (See Dkt. No. 31, 31-1.)

On August 16, 2022, the Court entered the stipulation and order. (See Dkt. No. 32.) On August 31, 2022, NCS Pearson submitted its Supplemental Reply Memorandum of Law in Opposition to the Motion to Dismiss (the "Supplemental Opposition"). (See Dkt. No. 33.) On September 14, 2022, Savvas filed its Supplemental Reply Memorandum of Law in Support of the Motion to Dismiss (the "Supplemental Reply"). (See Dkt. No. 34.)

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, a complaint should not be dismissed when the factual allegations

7

sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006); accord In re MF Glob. Holdings Ltd. Sec. Litig., 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013).

In this context, the Court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). A district court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Israel Disc. Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). Additionally, "[o]n a motion to dismiss for breach of contract, courts look not

only at the sufficiency of the complaint but also at the contract itself, which by definition is integral to the complaint." Axiom Inv. Advisors, LLC ex rel. Gildor Mgmt., LLC v. Deutsche Bank AG, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017). The requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

### III. DISCUSSION[4]

NCS Pearson raises four claims against Savvas in the Complaint: breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of the NYDPA in connection with Savvas's use of software owned by NCS Pearson. Savvas has moved to dismiss NCS Pearson's implied covenant, unjust enrichment, and Deceptive Practices Act claims. For the reasons explained below, the Court grants Savvas's Motion and dismisses the claims without prejudice.

---

[4] Section 7.6 of the License Agreement specifies that "[a]ll matters relating to or arising out of this Agreement or the transactions contemplated hereby (whether sounding in contract, tort or otherwise), including the interpretation hereof and any dispute in connection herewith, will be governed by and construed in accordance with the Laws of the State of New York, without giving effect to any choice of law or conflict of law provision or rule of any jurisdiction that would cause the application of the Laws of any jurisdiction other than the State of New York." (Dkt. No. 1-1.) Neither party disputes that New York law applies, and the Court concurs.

A. THE UNJUST ENRICHMENT CLAIM[5]

The Complaint alleges that "in the alternative to its breach of contract claim, [] NCS Pearson is entitled to recover under the doctrine of unjust enrichment," because "Savvas has used TestNav® beyond the scope of the limited license granted by NCS Pearson," and "benefit[ed] from the unlicensed use of TestNav® through receipt of compensation from third parties who paid Savvas to use products and services that improperly integrated TestNav®," and "deprived NCS Pearson of its right to receive compensation for the unlicensed use." (Complaint ¶¶ 76, 78-80.)

Savvas argues that NCS Pearson has failed to state a claim for unjust enrichment under New York law because "recovery on an equitable theory of unjust enrichment is not permitted where the matter at issue is covered by a valid, enforceable contract," and NCS Pearson has alleged, and "Savvas does not contest[,] that the License Agreement is a valid and enforceable contract." (See Memorandum at 2 (internal quotation marks omitted).)

NCS Pearson responds that its unjust enrichment claim was pled "in the alternative to its breach of contract claim,"

---

[5] The Court addresses the claims in the order they were raised in Savvas's Motion and Memorandum and the parties' subsequent briefing rather than as raised in the Complaint.

and that "[w]hile [it] alleged the existence of a valid and enforceable contract as part of its claims for breach of contract and breach of the implied covenant, NCS Pearson made no such allegation in its claim for unjust enrichment." (See Opposition at 2 (internal quotation marks omitted).) NCS Pearson further notes that "New York courts do not require that [it] allege explicitly that the contract is invalid." (Id.)

The Court finds that NCS Pearson's unjust enrichment claim fails as a matter of law because there is no allegation, explicit or implicit, including in the alternative, that the validity or scope of the contract is in dispute. See Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 388-89 (1987) (affirming dismissal of quasi-contract claim because "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter"). Though NCS Pearson is correct that it may bring an unjust enrichment claim in the alternative to a breach of contract claim,[6] that does not

---

[6] Contrary to Savvas's argument, NCS Pearson's allegation that "[t]he License Agreement is a valid and enforceable contract," is not at odds with its unjust enrichment claim because the allegation appears only under NCS Pearson's breach of contract and implied covenant claims. Though it is correct that the unjust enrichment claim, which appears later in the Complaint, "realleges and incorporates by reference all allegations in

relieve it of its obligation to plead the necessary allegations to bring an unjust enrichment claim under New York law.

NCS Pearson's argument that it need not explicitly allege that the contract or the scope of contract is in dispute is misplaced. In support of this argument, NCS Pearson cites Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y., where this Court denied a motion to dismiss an unjust enrichment counterclaim. See 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003) (Marrero, J.). In Net2Globe, the defendant sought dismissal arguing that valid contracts existed between the parties. In contrast to the Complaint here, however, in Net2Globe, "[t]he validity of the parties' contracts [was] a matter in dispute, [] as reflected in [Time Warner Telecom of New York's] Third Counterclaim asserting fraudulent inducement." Id. Here, the Complaint does not dispute the validity or scope of the contract, either explicitly or implicitly.

The Court is also unpersuaded by NCS Pearson's argument that dismissal is not warranted because Savvas has yet to file an answer and it is unclear what defenses they may raise

---

the preceding paragraphs, as if fully set forth herein," the Court does not read that to include the Causes of Action section.

about the enforceability or validity of the contract. Again, pleading in the alternative under Federal Rule of Civil Procedure 8(d) ("Rule 8(d)") does not relieve a party from having to plead the allegations necessary to their claim. Rather, Rule 8(d) provides parties with a way to bring ordinarily inconsistent claims to account for the branching paths a case may take.[7] This procedure works in conjunction with parties' opportunity to amend their filings as the case develops, including once an answer is filed.

It is the legal feasibility of NCS Pearson's unjust enrichment claim that is in question here. And the claim must stand, or fail, as drafted in the Complaint. Here, it fails. Accordingly, NCS Pearson's unjust enrichment claim is dismissed.

---

[7] The cases cited by NCS Pearson do not compel a different outcome. In Nat'l City Com. Cap. Co. v. Glob. Golf, Inc., the defendant moved to dismiss the unjust enrichment claim as incompatible with the plaintiff's breach of contract claim, even though it was brought in the alternative, because there was no dispute that a contract existed or applied. No. 09-CV-0307, 2009 WL 1437620 (E.D.N.Y. May 20, 2009). The court denied the motion, noting how "if this Court were to find, at a later stage of this litigation, that a valid and enforceable agreement governed the subject matter at issue in plaintiff's quasi-contract claim, such a claim would be barred," and holding that "at [the motion to dismiss] stage of the case, there [was] no basis to conclude that [plaintiff's quasi-contract claim] should be dismissed as a matter of law." Id. at *1. This Court respectfully declines to adopt that position here. Additionally, Liveperson, Inc. v. 24/7 Customer, Inc., 83 F. Supp. 3d 501 (S.D.N.Y. 2015), has no bearing on whether an allegation of a dispute regarding the existence or scope of a contract is necessary for an unjust enrichment claim because the issue was not raised in that case.

A. <u>THE BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM</u>

The Complaint alleges that "Savvas'[s] use of TestNav® in connection with MSDA and other products and services that did not exist as of March 29, 2019 deprives NCS Pearson of the benefit of its bargain and frustrates the purpose of the License Agreement" and "breaches the implied covenant of good faith and fair dealing." (<u>See</u> Complaint ¶¶ 71-72.)

Savvas argues that NCS Pearson's implied covenant claim should be dismissed because it is duplicative of the breach of contract claim, noting how the "implied-covenant claim relies on the same factual allegations as its breach of contract claim, namely Savvas's use of TestNav in its MSDA product." (<u>See</u> Memorandum at 2-3.)

NCS Pearson responds that the implied covenant claim "is not duplicative because it is based on allegations different from those underlying the accompanying breach of contract claim." (<u>See</u> Opposition at 2-3 (internal quotation marks omitted).) Specifically, the Complaint alleged "that Savvas has taken advantage of its access by using NCS Pearson's TestNav® software in an expanded manner far beyond the purpose of the agreement" and "[a]llegations that Savvas took advantage of its access to TestNav® to further its own, independent business ventures is [sic] sufficient to state a

14

claim for breach of the implied covenant in the alternative." (See Opposition at 2-3 (internal alterations and quotation marks omitted).)

The Court finds that NCS Pearson's implied covenant claim is duplicative of its breach of contract claim. A "claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." Hunt Const. Grp., Inc. v. Berkley Assurance Co., No. 21-2532-CV, 2022 WL 17825813, at *3 (2d Cir. Dec. 21, 2022) (internal quotation marks omitted). The conduct underpinning NCS Pearson's implied covenant claim is the same conduct underpinning its breach of contract claim: Savvas's use of TestNav beyond how it was used on or prior to March 29, 2019. Accordingly, NCS Pearson's implied covenant claim is dismissed.

   B. THE VIOLATION OF NEW YORK'S DECEPTIVE PRACTICES ACT
      CLAIM

The Complaint alleges that "[b]y offering products and services containing unauthorized versions of TestNav®, Savvas has engaged in unfair and deceptive acts and practices in violation of the NYDPA and this conduct is "likely to mislead and deceive consumers of Savvas'[s] products and services." (See Complaint ¶¶ 91-92.)

The NYDPA prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349. To state a claim under the NYDPA, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (quoting Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941 (2012)). Consumer-oriented conduct includes "the acts or practices [that] have a broader impact on consumers at large," while "[p]rivate contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995).

Savvas argues that NCS Pearson's NYDPA claim should be dismissed for three reasons. First, "Savvas's [alleged] conduct is not consumer-oriented, as is required to state a claim under the NYDPA," because the conduct is the breach of a "private contract governing the specific relationship between two sophisticated parties." (See Memorandum at 3 (internal quotation marks omitted).) As such, the "purported

16

breach has no broad impact on consumers at large, nor could it potentially affect similarly situated consumers." (Id. (internal quotation marks omitted)) Second, NCS Pearson has not alleged that "Savvas's purported conduct was materially misleading, as it must under the NYDPA," and "allegations that a defendant simply failed to satisfy its contractual duties, not that it concealed or misrepresented any contractual terms, are insufficient to state a New York deceptive practices claim." (Id. (internal quotation marks omitted)) Third, NCS Pearson has failed to "adequately link Savvas's purported conduct to New York," because "[f]or liability to attach under the NYDPA, the transaction in which the consumer is deceived must occur in New York," but the Complaint "lacks any New York-focused allegations against Savvas." (Id.)

NCS Pearson responds that the Complaint alleges "that Savvas'[s] conduct impacts consumers, such as students, teachers, and parents across the globe, including in New York." (See Opposition at 3 (citing to Complaint ¶¶ 10, 13-15).) NCS Pearson argues that a "matter affects the public interest where the conduct affects the public at large," and that other courts have "similarly found consumer-oriented conduct where there is widespread misconduct alleged." (Id.)

Regarding materiality, NCS Pearson argues that under "New York law, the test for misleading conduct is whether such act is likely to mislead a reasonable consumer acting reasonably under the circumstances," and that the Complaint "has sufficiently alleged that Savvas'[s] conduct is likely to mislead consumers that its products and services lawfully used third party software." (Id. (citing to Complaint ¶ 91))

The Court finds that NCS Pearson's NYDPA claim fails as a matter of law because the Complaint fails to plead sufficient facts to make out a plausible claim that Savvas has engaged in consumer-oriented conduct. As drafted, the Complaint alleges that "Savvas has engaged in unfair and deceptive acts and practices in violation of New York General Business Law § 349" "[b]y offering products and services containing unauthorized versions of TestNav®," which is "likely to mislead and deceive consumers of Savvas'[s] products and services." (Complaint ¶¶ 91-92.) The Complaint also alleges that "Savvas is engaged in the business of providing learning solutions across kindergarten to grade 12 [] throughout the globe." (Complaint ¶ 10.) Contrary to the gap-filling attempted by NCS Pearson in their Opposition and Supplemental Opposition, however, the Complaint does not bridge the gap between these points to allege

18

consumer-oriented conduct. (See Opposition at 3; Supplemental Opposition at 3.) For instance, the identify of the "consumers of Savvas'[s] products and services" to whom the conduct is oriented is unclear; is the conduct oriented towards schools, parents, teachers, or third parties, such tutoring services? (Complaint ¶ 91.) The Complaint does not say.

The Court does not necessarily agree with Savvas's contention, however, that "Pearson cannot show that Savvas'[s] conduct is consumer-oriented." (See Reply at 3 (internal quotation marks omitted).) Conduct allegedly constituting a breach of contract may be distinct from the conduct allegedly constituting a deceptive act or practice.

Accordingly, NCS Pearson's NYDPA claim is dismissed, and the Court need not reach whether dismissal is warranted on other grounds.[8]

---

[8] Although the Court does not reach whether dismissal of NCS Pearson's NYDPA claim is warranted for failure to sufficiently allege that Savvas's conduct was materially misleading, it is not apparent why "offering products and services containing unauthorized versions of TestNav®," or put differently, "embed[ing] TestNav® into MSDA and other products and services, exceeding the scope of its license under the License Agreement," would be materially misleading to a consumer. (Complaint ¶¶ 90, 92.) Contrary to the assertions in NCS Pearson's Opposition and Supplemental Opposition, there are no allegations in the Complaint that such conduct is materially misleading because consumers assume they are obtaining fully authorized software products, or that consumers might choose other products but for Savvas's omissions about the scope of its license. (See Opposition at 3; Supplemental Opposition at 3.) Even if such allegations were in the Complaint, NCS Pearson offered no cases in its briefing where such conduct was found to be materially misleading.

**IV.**   <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that the motion filed by defendant Savvas Learning Company, LLC (Dkt. No. 27) to dismiss, in part, the Complaint of plaintiff NCS Pearson, Inc. ("NCS Pearson") (Dkt. No. 1) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED.** NCS Pearson's unjust enrichment, implied covenant, and New York Deceptive Practices Act claims are dismissed without prejudice to NCS Pearson filing an amended complaint within 21 days of the date of this Order.

**SO ORDERED.**

Dated:   New York, New York
         3 February 2023

_____
                Victor Marrero
                U.S.D.J.